UNREDACTED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

-------------------------------------------------

UNITED STATES OF AMERICA          )
                                  )
VS                                )NO.1:20-cr-10063-STA
                                  )JACKSON, TENNESSEE
                                  )
JASON WAYNE AUTRY                 )

-------------------------------------------------


MOTION HEARING


APRIL 21, 2023




BEFORE THE HONORABLE S. THOMAS ANDERSON,

UNITED STATES DISTRICT JUDGE






KRISTI HEASLEY, RPR
OFFICIAL COURT REPORTER
U.S. COURTHOUSE, SUITE 450
111 SOUTH HIGHLAND AVENUE
JACKSON, TENNESSEE 38301




UNREDACTED TRANSCRIPT

1                               APPEARANCES

2

3

4       FOR THE UNITED STATES:

5       UNITED STATES ATTORNEY'S OFFICE
        BETH BOSWELL, ESQ.
6       WILLIAM JOSH MORROW, ESQ.
        109 S. Highland Avenue
7       Third Floor
        Jackson, TN 38301
8

9

10

11      FOR THE DEFENDANT:

12      MEGGAN BESS SULLIVAN, ESQ.
        424 Church Street, Suite 2000
13      Nashville, TN 37209

14

15

16

17

18

19

20

21

22

23

24

25

                        UNREDACTED TRANSCRIPT

1                           EXAMINATION INDEX

2                         NO TESTIMONY OFFERED

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        EXHIBITS

2                    NO EXHIBITS MARKED

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        (Defendant Present.)

3              THE COURT:  This is United States versus

4    Jason Wayne Autry, No. 21-10063.

5              We're here today -- originally we had a

6    sentencing scheduled for today.  Counsel filed, defense

7    counsel filed a motion to continue the sentencing

8    hearing, and then also the Court's received a letter from

9    the defendant asking some questions and indicating some

10   dissatisfaction with his current situation.

11             Just for reference, it looks like the

12   letter from Mr. Autry is Docket Entry Number 76.

13             Ms. Sullivan, do you want to be heard?

14   Where are we as far as you're concerned?

15             MS. SULLIVAN:  Your Honor, at this point,

16   because you set it for a motion in court today, I would

17   like to go ahead and -- and I can follow it up with a

18   written motion.  But I sort of alluded to it in my motion

19   to continue that I was anticipating filing a motion to

20   withdraw, or I was at least seeking the Tennessee Bar's

21   Ethics Attorney's opinions on what my position should be

22   in front of the Court.

23             So for today, if the Court would indulge

24   me, I would like to be heard on a motion to withdraw as

25   counsel.

1          THE COURT:  Well, let me ask you this.

2   Have you had a chance to meet with Mr. Autry and discuss

3   his letter and some of the concerns he expressed in his

4   letter, or are you not comfortable doing that?

5          MS. SULLIVAN:  Your Honor, it's not as

6   much a matter of comfort as it a matter of diminishing

7   returns at this point.

8          I have not met with him about that letter.

9   And part of the reasons is just, I just got out of a six

10  week jury trial, and in a week I'm about to go to Georgia

11  and try another four to five week jury trial, and I

12  haven't gotten a chance to get over here to do that.

13          I will tell the Court that these

14  discussions to varying degrees have been going on for

15  over a year.  And there have been various delays based on

16  the discussions already, including an emphatic decision

17  to plead guilty on Mr. Autry's part about eight or nine

18  months ago, only to get in court and find out that, for

19  the very first time, he's having, he was having issues

20  related to mental health.  And we had to delay that

21  hearing, and send him to be evaluated.

22          So I had him, out of an abundance of

23  caution, evaluated to protect some of the conversations

24  that we had had then.

25          I will say at this point, I've consulted

UNREDACTED TRANSCRIPT

1    with the Bar about Rule 1.16.  And I think we're still in

2    the may, and not like a mandatory withdraw, but we're in

3    the may category.

4              However, if you look at the factors for

5    those rules, given some of the things in the letter

6    that -- trying to be careful with my words, not to

7    disclose any type of attorney-privileged information.

8              However, without disclosing some of the

9    direct things that we have spoken about over the last

10   year to year and a half, I will say that if you look at,

11   I think, (b)(2), we're getting very close to me being

12   part of perpetuating something that might be false on the

13   Court during sentencing.

14             Especially if I consider some of the facts

15   that are written in that letter that have already been

16   given to the Court without my knowledge, I'm getting very

17   close -- I'm already in the (b)(1), 1.16(b)(1) factor, and

18   we're getting very close to forcing me to be part of

19   subsection 2.

20             And I will say that there are many things

21   in that letter that are absolutely false as far as my

22   representation.  And it puts me in a very difficult place

23   at sentencing, in trying to present witnesses, et cetera,

24   when -- we discussed at length about a motion to

25   suppress.  I discussed at length with the government

1    about the possibility of a motion to suppress, the basis

2    for a motion to suppress.

3              I have never in my career used the words,

4    you're going to make the government mad, so we shouldn't

5    pursue this legal remedy, or this pre-trial motion,

6    because we're going to make the government mad.

7              And that was discussed well in advance of

8    not only the first hearing to change plea, but also the

9    second hearing to change plea.  And at no point was a

10   decision made by Mr. Autry to file a motion to suppress.

11             So I'm just in a very difficult position

12   right now, because -- I think the Court is in a very

13   difficult position, quite frankly, because it appears

14   that that letter is setting up some post-conviction

15   relief.  And to allow me -- to force me to go on with a

16   sentencing hearing, to file objections to the PSR, or to

17   file a sentencing memorandum, when it already appears

18   Mr. Autry is likely laying a foundation for

19   post-conviction relief, that --

20             THE COURT:  Well, the letter, though -- if

21   we're both looking at the same letter, he asks if he can

22   have access to certain documents.  And then he basically

23   is talking about a breakdown in communication; which, I

24   hear allegations of breakdown in communication probably

25   once a week.

1          MS. SULLIVAN:  Right.

2          THE COURT:  So breakdown in communication,

3   at least in my opinion, is not cause for mandatory

4   withdraw of any kind.

5          MS. SULLIVAN:  I agree.

6          THE COURT:  Now is there another letter or

7   something that you're referring to that I'm overlooking?

8          MS. SULLIVAN:  Well, the first page of the

9   letter is talking about, that I refused to file a

10  suppression motion.  It might be on the second page.  So

11  I think it's a little more than a breakdown in

12  communication, but --

13         THE COURT:  Well, again, I'm just -- this

14  is Docket Entry Number 76.  Mr. Autry just tells me his

15  name.  States, I have some questions.  Can I have a copy

16  of my mental health evaluation?  Can I get a copy of the

17  presentence report?  Asked about mitigation.  Possibility

18  of a mitigation specialist.  Then asks, can he speak to

19  the -- what he calls the DA, but the Assistant United

20  States Attorney regarding any kind of relief that he

21  might, he thinks he might be entitled to.

22         And then he goes into -- my attorney, I

23  have reached out to her, and she hasn't responded.

24         But again, that's not an uncommon

25  complaint.  I'm not saying it's true or false or in

1    between, but it's not an uncommon situation, especially

2    when you've got someone incarcerated and -- you just said

3    you had been tied up for the last six weeks, sounds like.

4                    MS. SULLIVAN:  I think -- are you looking

5    at Docket Entry 76?

6                    THE COURT:  I am.

7                    MS. SULLIVAN:  There is also a Docket

8    Entry 73 that was a letter that was filed under seal.

9    That's the one I was referring to, Your Honor.

10                    THE COURT:  Would you print that out for

11    me, Mr. Bryson?

12                    MR. MORROW:  Your Honor, just for the

13    record, the government does not have a copy of Docket No.

14    76.  Ms. Sullivan gave us a copies of another letter,

15    which is Docket No. 73.

16                    MS. SULLIVAN:  I don't believe I have a

17    copy of 76.

18                    MR. MORROW:  I don't think either one of

19    us have a copy of No. 76.

20                    THE COURT:  Well, it was filed under seal

21    on the -- why would you not -- why would you not get a

22    copy, I wonder?

23                    MR. MORROW:  If it's filed under seal, the

24    other side would have --

25                    THE COURT REPORTER:  I didn't hear what

1   you said.

2                   MR. MORROW:  I said, if it's filed under

3   seal, the other party would have to send a copy to us.

4                   THE COURT:  But, Ms. Sullivan, I assume --

5   did you receive it?

6                   MS. SULLIVAN:  I know 73 was emailed to me

7   by the Court.  Ms. Smith might have emailed me 76 too.  I

8   did email 73 to the government.

9                   THE COURT:  All right.  For the record,

10  now I have a copy of Docket Entry Number 73, which also

11  appears to be a handwritten letter signed by Mr. Autry,

12  four page letter, it would appear.  Let's see, it's

13  dated -- looks like it was filed on February 21st of this

14  year.

15                  MS. SULLIVAN:  Yes.  That's the one that I

16  have.  I don't have a copy of 76.

17                  THE COURT:  Well, Mr. Bryson, if you will,

18  print a copy of Docket Entry 76 and provide it to Ms.

19  Sullivan.

20                  MS. BOSWELL:  Your Honor, are we allowed

21  to have a copy of that as well?

22                  THE COURT:  Well, let's let Ms. Sullivan

23  look at it first.  I think I pretty well outlined it on

24  the record so far, so you have a pretty good idea of what

25  we're dealing with.

 1              Let's let Ms. Sullivan take a look at it
 2  and then -- I would think -- again, I think I've outlined
 3  it on the record already.
 4              It would appear to the Court that -- well,
 5  Docket Entry Number 73 is much longer and much more
 6  detailed as far as some of Mr. Autry's concerns.
 7              Did you say you had 73?
 8              MR. MORROW:  Yes, Your Honor.
 9              THE COURT:  Okay.  All right.  Let's take
10  these together.
11              So, Ms. Sullivan, let me start all over as
12  far as asking you.
13              So based on the contents of Docket Entry
14  73 and Entry 76, do you believe that there is mandatory
15  withdraw, or just permissive?
16              MS. SULLIVAN:  Your Honor, I really think
17  we're in the permissible withdraw.  It's getting very
18  close to the mandatory; however, I think we're still in
19  the permissible.
20              However, as an ancillary issue for the
21  Court to consider, along with mandatory or permissible
22  withdraw, we have what appears to be in Docket Entry 73
23  some foundation for potential post-conviction relief
24  issues.
25              And while that's also not foreign to the

UNREDACTED TRANSCRIPT

1    Court, or to defense lawyers, it does put me in a

2    difficult position where we are right now.  One of the

3    factors is whether it would -- I'm going to mess up the

4    words -- but basically, put the defendant in a position

5    where he might be harmed.

6              And at this point, the PSR has been done.

7    There is still potential for him to have a CJA lawyer

8    appointed to him who can do all the mitigation work, at

9    least up until the judgment is final.  And so then the

10   only post-conviction relief issues, as far as it pertains

11   to me, would be the negotiations leading up to

12   sentencing.

13             However, if I'm reading that letter right,

14   based on my experience, there seems to be some foundation

15   being laid for post-conviction relief.  And if that's the

16   case, me filing additional pleadings with the Court

17   potentially opens the door for even more post-conviction

18   issues down the road.

19             So I don't know whether it's prudent or

20   expeditious at this point to continue and allow those

21   issue to keep going, or -- and also some of the things in

22   that letter, in my opinion, are false.

23             And so it is putting me in a difficult

24   position down the road to know what things I can present

25   to the Court outside of a motion hearing, where it may

UNREDACTED TRANSCRIPT

1    have more ramifications than just speaking candidly to

2    the Court in a motion to withdraw.

3                    THE COURT:  Okay.  Are you Jason Wayne

4    Autry?

5                    THE DEFENDANT:  Yes, sir.

6                    THE COURT:  All right.  Mr. Autry, pull

7    that -- move close to one of those microphones, if you

8    can.

9                    You sent me a couple of letters.

10                   Is that correct?

11                   THE DEFENDANT:  That's correct, sir.

12                   THE COURT:  All right.  And you heard us

13   refer to those this morning as Docket Entry No.  73 and

14   76.

15                   Do you know what I'm referring to?

16                   THE DEFENDANT:  Yes, sir.

17                   THE COURT:  Okay.  First, Mr. Autry, let

18   me caution you.  Don't say anything about the facts of

19   your case.  Okay?

20                   Now we're at a point where you've already

21   entered a plea of guilty in your case.  There has been an

22   evaluation, as you know.  And we're ready for sentencing.

23   But I still don't want you to say anything that the

24   government could use against you in any way.

25                   Do you understand?

UNREDACTED TRANSCRIPT

1                          THE DEFENDANT:  (Witness nods.)

2                          THE COURT:  Answer out loud.

3                          THE DEFENDANT:  Yes, sir.

4                          THE COURT:  Okay.  Don't say anything

5     about the facts of your case.  We're strictly -- this

6     morning, all I'm trying to decide is whether it's

7     appropriate to allow Ms. Sullivan to withdraw and appoint

8     you a new attorney.  Okay?

9                          So in the most recent letter that you sent

10    it looks like it's dated March 20th, which roughly a

11    month ago.

12                         THE DEFENDANT:  Yes, sir.

13                         THE COURT:  You asked some questions.

14                         Do you agree?

15                         THE DEFENDANT:  Yes, sir.  About --

16                         THE COURT:  Some document that you would

17    like to have access to.  And I'm assuming since you're

18    asking for those, that --

19                         THE DEFENDANT:  Well, one of them --

20                         THE COURT:  Wait.  Let me finish.

21                         Either you haven't received them, or as

22    far as you know you haven't received them.

23                         Is that right?

24                         THE DEFENDANT:  Well, one of them came

25    while I was in the booth there.

1          THE COURT:  And then you go on to say that

2    you have made repeated attempts to contact Ms. Sullivan

3    and she hasn't responded.

4          Is that true?

5          THE DEFENDANT:  That's correct.

6          THE COURT:  All right.  You heard what Ms.

7    Sullivan had to say this morning.  Correct?

8          THE DEFENDANT:  Yeah.

9          THE COURT:  Did you understand what she

10   said?

11         THE DEFENDANT:  Yeah.

12         THE COURT:  And basically, she is telling

13   the Court that she's not sure that she can continue to

14   represent you --

15         THE DEFENDANT:  I feel equal, the same

16   thing she feels.

17         THE COURT:  You agree with what she said?

18         THE DEFENDANT:  Yeah.  I think that, I

19   think that the ends and outs of it are just too far to

20   reconcile on it.  You now what I mean?  Reconciliation

21   is -- I don't much see that.

22         THE COURT:  Well, but you retained Ms.

23   Sullivan.  Right?

24         THE DEFENDANT:  I did, yeah.

25         THE COURT:  And she has represented you

UNREDACTED TRANSCRIPT

1    now for -- I think I looked, and your case is over two

2    years old.

3                    THE DEFENDANT:  Yeah.

4                    THE COURT:  And so she's been your

5    attorney now for over two years.  Correct?

6                    THE DEFENDANT:  We started out good, but

7    we made bad turns, I guess.

8                    THE COURT:  Well, that happens sometimes.

9    Sometimes the attorneys and their clients don't always

10    see eye to eye.  That's part of the process.

11                    But what I've got to decide is whether

12    it's appropriate under all the circumstances to allow Ms.

13    Sullivan to withdraw.  And then I would -- either you

14    would have to retain another new attorney.  Or if you

15    can't afford one, then I would, either I would or another

16    Judge would appoint someone to represent you.

17                    Do you understand that?

18                    THE DEFENDANT:  Yeah.

19                    THE COURT:  Is that how you want to

20    proceed?

21                    THE DEFENDANT:  I mean, that sounds good

22    to me.

23                    THE COURT:  Are you going to --

24    financially, are you going to be in a position to retain

25    a new attorney?

1          THE DEFENDANT:  I doubt it.

2          THE COURT:  Well, that's something that

3   would have to be decided.  You would have to fill out

4   what's called a financial affidavit.  And then either I

5   would or another Judge, probably be another Judge, would

6   take a look at it and decide, based on your current

7   financial situation, whether or not the Judge believes

8   that you were financially able to retain another

9   attorney.

10          Do you understand?

11          THE DEFENDANT:  Yeah.

12          THE COURT:  If he or she decided that you

13  could, then that would be what you would have to do.  If

14  you have enough financial resources or assets to retain

15  another attorney, then that's what you would have to do.

16          If you do not have enough resources, then

17  the Court can appoint someone to represent you.

18          Do you understand?

19          THE DEFENDANT:  Yeah.

20          THE COURT:  But also under either

21  scenario, it's probably going to move your case -- and by

22  move your case, I mean move sentencing back for several

23  months.

24          Do you understand?

25          THE DEFENDANT:  Yeah.

UNREDACTED TRANSCRIPT

1          THE COURT:  Well, I mean, a new attorney

2   is going to have to have enough time, whether they're

3   retained or appointed, to get up to speed in your case,

4   and understand everything, and probably have discussions

5   with the government about issues that might arise during

6   your sentencing.

7          Do you understand?

8          THE DEFENDANT:  Yeah.  Yeah, I understand.

9          THE COURT:  Is that still what you want to

10  do?

11         THE DEFENDANT:  Well, it would be nice if

12  a man could just come together with the figure right here

13  today and settle it all today.

14         THE COURT:  That's not going to happen.

15         THE DEFENDANT:  That's not going to

16  happen.

17         THE COURT:  That's not how we do it.  No,

18  sir.

19         THE DEFENDANT:  Well...

20         THE COURT:  Mr. Autry, you don't want it

21  done that way anyway.  You want to be sure that whenever

22  I sentence you, that I've considered everything I need to

23  consider, and that you're sentenced fairly.

24         That's what you want.  Right?

25         THE DEFENDANT:  Yeah, I guess so.

1          THE COURT:  Well, I know so.

2          And so to say let's just go ahead and do

3   it while we're all sitting here, that's just not the way

4   we're going to handle things.  We want to be sure we do

5   it the right way, and that whatever sentence you receive

6   is based on all the information that I have and I make

7   what I hope is the right decision.  Okay?

8          THE DEFENDANT:  Yeah.

9          THE COURT:  All right.  Was there anything

10  else you want to add?

11         THE DEFENDANT:  No.  No.

12         THE COURT:  Any questions you have?

13         THE DEFENDANT:  No.  I ain't got no

14  questions.  I'm thankful for what she done.

15         THE COURT:  Do you -- bottom line, you

16  think the relationship, the attorney-client relationship

17  between and you and Ms. Sullivan has broken down.

18         Is that correct?

19         THE DEFENDANT:  Yeah.  Yeah.

20         THE COURT:  And you, rightly or wrongly,

21  you don't have confidence in her continued representation

22  of you.

23         THE DEFENDANT:  No.  Uh-uh (negative

24  response).

25         THE COURT:  Ms. Sullivan, you're telling

UNREDACTED TRANSCRIPT

1   me you, based on everything in your experience and your

2   knowledge, you think the relationship has deteriorated to

3   a point that it would be in Mr. Autry's best interest to

4   have new counsel either appointed or retained?

5                   MS. SULLIVAN:  Yes, Your Honor.

6                   THE COURT:  Government have any anything

7   to say?

8                   MS. BOSWELL:  No, sir, Your Honor.

9                   THE COURT:  Well, I think in light of what

10  Ms. Sullivan said this morning -- obviously, it's a

11  little more concerning when we have retained counsel,

12  just because -- and especially counsel that has been

13  involved in the case for this extended period of time.

14                  But based on the contents of the letters

15  that we've referred to previously, statements made by

16  Mr. Autry, the statements made by Ms. Sullivan, I'm going

17  to grant her verbal or oral motion to withdraw.  And then

18  I'm going to refer the matter to the Magistrate Judge to

19  determine if Mr. Autry has the ability to retain counsel.

20  Or if not, to have counsel appointed to represent him for

21  sentencing -- I'll just say going forward.  I don't know

22  what else might arise between now and when we come back.

23                  Do you understand, Mr. Autry?

24                  THE DEFENDANT:  Yes, sir.

25                  THE COURT:  Is there anything else you

22

1   want to tell me?  If there is, now is your time.

2                    THE DEFENDANT:  No.  No.  I ain't got

3   nothing else to say.

4                    THE COURT:  All right.  Then that's what

5   we'll do.  And so we'll refer this down -- do you have

6   any idea -- Judge York is not here today, I don't think.

7                    THE CLERK:  Yes, sir.

8                    MR. MORROW:  He is here today.

9                    THE COURT:  Okay.  Well, I'm just -- I

10  thought maybe he was out.

11                   We might see if -- I don't know, since

12  Mr. Autry is here, just to try to move the process along,

13  we might see if Judge York would have time for Mr. Autry

14  to complete a financial affidavit and then make a

15  determination on whether he's in a position to retain

16  counsel or whether we need to appoint counsel to

17  represent him.

18                   Maurice, if you will, reach out to Judge

19  York's courtroom deputy and see where they are.

20                   THE CLERK:  Yes, sir.

21                   THE COURT:  Anything else, Ms. Sullivan?

22                   MS. SULLIVAN:  No, Your Honor.

23                   THE COURT:  Anything else, Mr. Autry?

24                   THE DEFENDANT:  No, sir.

25                   THE COURT:  Anything from the government?

UNREDACTED TRANSCRIPT

1              MS. BOSWELL:  No, sir.

2              THE COURT:  All right.  Thank you.

3              THE DEFENDANT:  Thank you.

4              (End of Proceedings.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT

1          I, Kristi Heasley, do hereby certify that the

2    foregoing 23 pages are, to the best of my knowledge,

3    skill and ability, a true and accurate unredacted

4    transcript from my stenotype notes in the matter of:

5    UNITED STATES OF AMERICA

6                                        )
     VS                                  )NO.1:20-cr-10063-STA
7                                        )JACKSON, TENNESSEE
                                         )
8    JASON WAYNE AUTRY                   )

9          Dated this 14th day of August, 2023.

10

11

12   /s/  Kristi Heasley

13   ----------------------------------
     Kristi Heasley, RPR
14   Official Court Reporter
     United States District Court
15   Western District of Tennessee
     Eastern Division
16

17

18

19

20

21

22

23

24

25

                    UNREDACTED TRANSCRIPT